2012-1673, -1674

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CYBERFONE SYSTEMS, LLC (f/k/a LVL Patent Group, LLC),

Plaintiff-Appellant,

v.

CNN INTERACTIVE GROUP, INC., CBS INTERACTIVE, INC., FOX NEWS NETWORK, LLC, WARNER BROS ENTERTAINMENT, INC., UNIVISION INTERACTIVE MEDIA, INC., HOME BOX OFFICE, INC., NETFLIX, INC., DOW JONES & CO., INC., HULU, LLC, NBA MEDIA VENTURES, LLC, NFL ENTERPRISES, LLC, YAHOO! INC., SKYPE, INC., GROUPON, INC., TWITTER, INC., LINKEDIN CORPORATION, YELP! INC., DOW JONES LOCAL MEDIA GROUP, INC., FLIXSTER, INC., FOX INTERACTIVE MEDIA, INC., FOX SPORTS INTERACTIVE MEDIA, LLC, FOX SOCCER CHANNEL, LLC, NBA PROPERTIES, INC., and TWENTIETH CENTURY FOX FILM CORPORATION,

Defendants-Appellees,

and

AMAZON.COM, INC., UNITED AIRLINES, INC., SOUTHWEST AIRLINES CO., AVIS BUDGET GROUP, INC., HERTZ CORPORATION, MARRIOTT INTERNATIONAL, INC., HILTON WORLDWIDE, INC., INTERCONTINENTAL HOTELS CORPORATION, AMAZON SERVICES, LLC, ORBITZ WORLDWIDE, LLC, HILTON HOTELS CORPORATION, HILTON GARDEN INNS MANAGEMENT, LLC, PURE BIZ SOLUTIONS, LLC, and SIX CONTINENTS HOTELS, INC.,

Defendants-Appellees.

and

AMERICAN AIRLINES, INC., IMBD.COM, INC. and PLAYFIELD APPS COMPANY,

Defendants.

Appeals from the United States District Court for the District of Delaware in case nos. 11-cv-0829 and 11-cv-0831, Judge Sue L. Robinson

## RESPONSIVE BRIEF OF DEFENDANTS-APPELLEES

Steven Lieberman
Sharon Davis
Brian Rosenbloom
R. Elizabeth Brenner-Leifer
ROTHWELL, FIGG, ERNST &
MANBECK, PC
607 14th Street, NW, Suite 800
Washington, DC  20005
Phone: (202) 783-6040

*Attorneys for Defendants-Appellees CBS
Interactive Inc., CNN Interactive Group,
Inc., Dow Jones & Company, Inc., Dow
Jones Local Media Group, Inc.,
Flixster, Inc., Fox Interactive Media,
Inc., Fox News Network, LLC, Fox
Soccer Channel, LLC, Fox Sports
Interactive Media, LLC, Home Box
Office, Inc., Hulu, LLC, Twentieth
Century Fox Film Corporation,
Univision Interactive Media, Inc.,
Warner Bros. Entertainment, Inc.*

Susan M. Coletti
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Phone (302) 652-5070
*Attorney for Defendants-Appellees Avis
Budget Group, Inc., Hertz Corporation,
Orbitz Worldwide, LLC*

Stephen E. Baskin
KILPATRICK TOWNSEND &
STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC  20005
Phone (202) 508-5899

*Attorney for Defendant-Appellee United*

J. Christopher Carraway
Kristin L. Cleveland
Robert T. Cruzen
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Phone: 503-595-5300

*Attorneys for Defendants-Appellees
LinkedIn Corp., NBA Media Ventures,
LLC, NBA Properties, Inc., Netflix, Inc.,
NFL Enterprises, LLC, Skype, Inc.,
Twitter Inc., Yahoo! Inc., Yelp! Inc.*

Jack B. Blumenfeld
Karen Jacobs Louden
MORRIS, NICHOLS, ARSHT &
TUNNEL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Phone: (302) 658-9200

*Attorneys for Defendants-Appellees
Hilton Garden Inns Management, LLC,
Hilton Worldwide, Inc., f/k/a Hilton
Hotels Corporation*

John Cuddihy
Brian M. Koide
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Phone: (202) 624-2500

*Attorneys for Defendant-Appellee
Marriott International, Inc.*

Kirin K. Gill
James C. Yoon

*Airlines, Inc.*

George L. Murphy, Jr.
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4528
Phone: (404) 815-6500

*Attorney for Defendants-Appellees*
*Intercontinental Hotels Corporation, Six*
*Continents Hotels, Inc.*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Phone: (302) 652-5070

*Attorney for Defendant-Appellee Pure*
*Biz Solutions, LLC*

Ryan R. Smith
WILSON SONSINI GOODRICH &
ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone: (650) 493-9300

*Attorneys for Defendant-Appellee*
*Groupon Inc.*

Max Ciccarelli
J. Michael Heinlen
Justin S. Cohen
THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, TX 75201
Phone: (214) 969-1599

*Attorneys for Defendant-Appellee*
*Southwest Airlines Co.*

March 6, 2013

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CYBERFONE SYSTEMS, LLC    v.  CNN INTERACTIVE GROUP

No. 2012-1673

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
_____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

See Attachment A

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

See Attachment A

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

See Attachment A

_____

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

ROTHWELL, FIGG, ERNST & MANBECK, P.C. and MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Steven Lieberman, Sharon L. Davis, Brian S. Rosenbloom, R. Elizabeth Brenner, Jack B. Blumenfeld,

_____10/10/12_____                      _____
        Date                                     Signature of counsel

                                        Steven Lieberman
                                        Printed name of counsel

Please Note: All questions must be answered
cc: All counsel of record _____

124

iv

## Attachment A

| Full Name of Party Represented by me | Name of Real Party in Interest | Parent Corporation and Publicly Held Companies That Owns 10% or More of Stock in Party |
|---|---|---|
| CNN Interactive Group, Inc. | Same | Cable News Network, Inc.<br>Turner Broadcasting System, Inc.<br>Time Warner, Inc. |
| CBS Interactive Inc. | Same | CBS Corporation |
| Fox Sports Interactive Media, LLC. | Same | CBS Corporation |
| Fox Interactive Media, Inc. | Same | News Corporation |
| Fox Sports Interactive Media, LLC. | Same | Fox Entertainment Group, Inc.<br>News Corporation |
| Fox Soccer Channel, LLC | Same | Fox Entertainment Group, Inc.<br>News Corporation |
| Warner Bros. Entertainment, Inc. | Same | Time Warner, Inc. |
| Univision Interactive Media, Inc. | Same | Univision Communications, Inc.<br>Broadcast Media Partners Holding, Inc.<br>Broadcast Media Partners, Inc. |
| Home Box Office, Inc. | Same | Time Warner, Inc. |
| Dow Jones & Company, Inc. | Same | News Corporation |
| Dow Jones Local Media Group, Inc. | Same | Dow Jones & Company, Inc.<br>News Corporation |
| Hulu, LLC | Same | NBC Universal, Inc.<br>Walt Disney Company<br>News Corporation |
| Flixster, Inc. | Same | Time Warner, Inc. |

Form 9

FORM 9.   Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CyberFone Systems, LLC _____ v. CNN Interactive Group et al. _____

No. 12-1673 _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
J. Christopher Carraway _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

LinkedIn Corp.; NBA Media Ventures, LLC; NBA Properties, Inc.; Netflix, Inc.; NFL Enterprises, LLC; Skype, Inc.; Twitter Inc.; Yahoo! Inc.; Yelp! Inc.

---

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

---

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NFL Ventures, L.P.; Microsoft Corporation; Skype Global S.A.R.L.; Springboard Acquisition Corp.

---

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

KLARQUIST SPARKMAN, LLP (J. Christopher Carraway, Kristin L. Cleveland, Robert T. Cruzen, Klaus H. Hamm); MORRIS, NICHOLS, ARSHT &TUNNELL LLP (Jack B. Blumenfeld, Karen Jacobs Louden, Paul Saindon)

---

October 5, 2012 _____            /s/ J. Christopher Carraway _____
        Date                              Signature of counsel
                                      J. Christopher Carraway _____
                                      Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CyberFone Systems, LLC _____ v. CNN Interactive Group _____

No. 12-1673; 12-1674

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Hilton Worldwide, Inc.;
Hilton Garden Inns Management LLC _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Hilton Worldwide, Inc. (formerly known as Hilton Hotels Corporation)
Hilton Garden Inns Management LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
Hilton Global Holdings LLC, Hilton Hotels Holdings LLC, BH Hotels Holdco LLC, Blackstone Group LP

4.  ☐  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Jack B. Blumenfeld, Karen Jacobs Louden, Paul Saindon, Regina Murphy and Stephen J. Kraftschik of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington, DE 19899-1347

_____10·5-12_____
Date

_____ _____
Signature of counsel
Jack B. Blumenfeld
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

Form 9

FORM 9. Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CYBERFONE SYSTEMS LLC        v. CNN INTERACTIVE GROUP

No. 2012-1673,-1674

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Susan M. Coletti _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Avis Budget Group, Inc.
Hertz Corporation
Orbitz Worldwide, LLC

---

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

---

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

As to Avis Budget Group, Inc.: - None
As to Hertz Corporation:  Hertz Investors, Inc.; Hertz Global Holdings, Inc.
As to Orbitz Worldwide, LLC:  Orbitz Worldwide, Inc.

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Fish & Richardson P.C.; William J. Marsden, Jr., Susan M. Coletti, Lauren M. Pringle, Neil J. McNabnay, Thomas H. Reger, II

---

| | |
|---|---|
| _____10/12/12_____ | /s/ Susan M. Coletti |
| Date | Signature of counsel |
| | Susan M. Coletti |
| | Printed name of counsel |

Please Note: All questions must be answered
cc: Counsel of Record - see attached

---

124

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CyberFone Systems                    v. CNN Interactive Group

No. 12-1673, -1674

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

appellee                    certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:
Marriott International, Inc.

---

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
None.

---

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
T. Rowe Price Associates, Inc.

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
John L. Cuddihy, Brian M. Koide, and Craig P. Lytle, and Jeffrey D. Ahdoot of Crowell & Moring LLP. Frederick L. Cottrell, III, Anne Shea Gaza, and Travis Steven Hunter Richards, Layton & Finger, PA.

---

_10/9/12_
Date

_[signature]_
Signature of counsel

_JOHN L. CUDDIHY_
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

Form 9

FORM 9. Certificate of Interest

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Cyberfone Systems _____ v. CNN Interactive Group _____

No. 2012-1673, -1674

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Stephen E. Baskin _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

United Air Lines, Inc.

---

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

---

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

United Continental Holdings, Inc.

---

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Jack B. Blumenfeld, Karen Jacobs Louden and Stephen J. Kraftschik of Morris Nichols, Arsht & Tunnell LLP; and John C. Alemanni of Kilpatrick Townsend & Stockton LLP

---

10/5/2012
_____
Date

_____
Signature of counsel

Stephen E. Baskin
_____
Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

x

Nos. 2012-1673, -1674

# United States Court of Appeals
## FOR THE FEDERAL CIRCUIT

CYBERFONE SYSTEMS, LLC,

*Plaintiff-Appellant,*

*v.*

CNN INTERACTIVE GROUP, INC., CBS INTERACTIVE, INC., FOX NEWS NETWORK, LLC, WARNER BROS ENTERTAINMENT, INC., UNIVISION INTERACTIVE MEDIA, INC., IMDB.COM, INC., HULU, LLC, NBA MEDIA VENTURES, LLC, NFL ENTERPRISES, LLC, YAHOO! INC., SKYPE, INC., GROUPON, INC., TWITTER, INC., LINKEDIN CORPORATION, YELP! INC., DOW JONES LOCAL MEDIA GROUP, INC., FLIXTER, INC., FOX INTERACTIVE MEDIA, INC., FOX SPORTS INTERACTIVE MEDIA, LLC, FOX SOCCER CHANNEL, LLC, NBA PROPERTIES, INC., PLAYFIELD APPS COMPANY, and TWENTIENTH CENTURY FOX FILM CORPORATION,

*Defendants-Appellees,*

and

AMAZON.COM, INC., AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., SOUTHWEST AIRLINES CO., AVIS BUDGET GROUP, INC., HERTZ CORPORATION, MARRIOT INTERNATIONAL, INC., HILTON WORLDWIDE, INC., INTERCONTINENTAL HOTELS CORPORATION, AMAZON SERVICES, LLC, ORBITZ WORLDWIDE, LLC, HILTON HOTELS CORPORATION, HILTON GARDEN INNS MANAGEMENT, LLC, PURE BIZ SOLUTIONS, LLC, and SIX CONTINENTS HOTELS, INC.

*Defendants-Appellees.*

*Appeals from the United States District Court for the District of Delaware in Case Nos. 11-CV-0829, and 11-CV-0831, Judge Sue L. Robinson*

## CERTIFICATE OF INTEREST

Counsel for Appellee Groupon Inc. certify the following:

1.     The full name of every party represented by the undersigned counsel in this case is:  Groupon Inc.

2.     The name of the real parties in interest represented by the undersigned counsel is:  Groupon Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by the undersigned counsel are:  Groupon Inc. does not have a parent corporation and no publicly held company owns ten percent (10%) or more of its stock.

4.     The names of the law firms and the partners and associates that have appeared for Appellant in the trial court or are expected to appear for Appellant in this Court are:  James C. Yoon, Ryan R. Smith, and Kirin K. Gill of Wilson Sonsini Goodrich & Rosati, Palo Alto, CA; Richard K. Herrmann and Mary B. Matterer of Morris James, Wilmington, DE.

October 5, 2012

By:   /s/ *James C. Yoon*
James C. Yoon
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: jyoon@wsgr.com
*Attorneys for Groupon Inc.*

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CYBERFONE SYSTEMS _____ v. CNN INTERACTIVE GROUP _____

No. 2012-1673, -1674

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellees Inter-Continental Hotels Corporation
and Six Continents Hotels, Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Inter-Continental Hotels Corporation (Appellee)
Six Continents Hotels, Inc. (Appellee)

---

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

---

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

InterContinental Hotels Group PLC

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Kilpatrick Townsend & Stockton LLP: George L. Murphy, Jr., Vaibhav P. Kadaba, Audra A. Dial, and Michael T. Morlock
Morris, Nichols, Arsht & Tunnell LLP: Jack B. Blumenfeld, Karen Jacobs Louden, Regina S.E. Murphy, and Stephen J. Kraftschik

---

October 5, 2012 _____ | /s/ George L. Murphy, Jr. _____
Date | Signature of counsel
 | George L. Murphy, Jr. _____
 | Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

---

Form 9

FORM 9. Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CYBERFONE SYSTEMS, LLC    v. CNN INTERACTIVE GROUP, INC., et al.

No. 2012-1673, 1674

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Pure Biz Solutions, LLC    certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:
Pure Biz Solutions, LLC

---

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
N/A

---

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
None

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Fish & Richardson P.C.; Thomas L. Halkowski; Lauren Murphy Pringle

---

10/17/12
Date

/s/ Thomas L. Halkowski
Signature of counsel

Thomas L. Halkowski
Printed name of counsel

Please Note: All questions must be answered
cc: Counsel of Record

124

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CyberFone Systems _____ v. CNN Interactive Group _____

No. 2012-1673, -1674

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellee Southwest Airlines Co. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Southwest Airlines Co.

---

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

---

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Max Ciccarelli, J. Michael Heinlen, and Justin S. Cohen of Thompson & Knight LLP
Kelly E. Farnan of Richards, Layton & Finger, PA

---

| October 12, 2012 | /s/ Max Ciccarelli |
|---|---|
| Date | Signature of counsel |
| | Max Ciccarelli |
| | Printed name of counsel |

Please Note: All questions must be answered

cc: _____

---

124

# TABLE OF CONTENTS

CERTIFICATES OF INTEREST ............................................................ iv

TABLE OF AUTHORITIES ............................................................. xviii

TABLE OF ABBREVIATIONS .......................................................... xxi

STATEMENT OF RELATED CASES ..................................................1

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE CASE.............................................................1

STATEMENT OF FACTS ..................................................................6

SUMMARY OF ARGUMENT ..........................................................12

ARGUMENT ...................................................................................13

I.    Standard of Review and Legal Standards for Summary Judgment..............13

II.   Resolution of Defendants' Summary Judgment Motion Did Not Require Claim Construction. ......................................................................14

    A.    The District Court Properly Decided the § 101 Issue Without Claim Construction..................................................................14

    B.    This Court Should Affirm the District Court's Judgment Because Plaintiff Waived Its Right to Claim Construction by Failing to Present Any Claim Construction Dispute to the District Court. ...........................19

III.  The District Court Correctly Concluded that the Subject Matter Recited in Claim 1 Is Not Patent Eligible Under § 101............................................20

    A.    The District Court Applied the Correct Legal Standard. .........................20

    B.    Plaintiff Has Not Identified Any Claim Language that the District Court Failed To Consider. ...................................................24

    C.    The District Court Correctly Concluded that Claim 1 Fails the Machine-or-Transformation Test........................................................25

        1.    No Specific Machine Performs Any of the Steps. ..............................25

        2.    None of the Steps Transform Anything. .............................................31

D.    The District Court Correctly Concluded that Claim 1 Is Drawn to an Abstract Concept. ....................................................................................33

IV.    This Court Should Affirm the District Court's Judgment Relating to Patent Claims Other Than Claim 1 Because Plaintiff Waived Its Arguments Relating to Those Claims............................................................39

A.    The District Court Properly Decided Defendants' Motion on the Basis of Claim 1. ................................................................................................39

B.    In Any Event, Claim 18 Is Invalid Under § 101 ......................................44

CONCLUSION ....................................................................................................46

# TABLE OF AUTHORITIES

**Cases**

*Ballard Medical Products v. Allegiance Healthcare Corporation*,
268 F.3d 1352 (Fed. Cir. 2001) ............................................................. 14, 18, 20

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) .................................................................. passim

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010) ................................................................................. passim

*CCS Fitness, Inc. v. Brunswick Corporation*,
288 F.3d 1359 (Fed. Cir. 2002) .............................................................................42

*CLS Bank International v. Alice Corporation Pty., Ltd.*,
685 F.3d 1341 (Fed. Cir. 2012) ...............................................................................4

*Cybersource Corporation v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ................................................................... passim

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ................................................................... passim

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ..............................................................................................21

*Diamond v. Diehr*,
450 U.S. 175 (1981) ..............................................................................................23

*Eli Lilly and Company v. Aradigm Corporation*,
376 F.3d 1352 (Fed. Cir. 2004) ...........................................................................20

*Fort Properties, Inc. v. American Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012) .............................................................. 14, 23, 38

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) .............................................................................42

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*,
333 U.S. 127 (1948) ..............................................................................................21

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ................................................................ 23, 34, 36

*Halliburton Energy Services, Inc. v. M-I, LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ...............................................43

*Harris Corporation v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005) ...............................................20

*HTC Corporation v. IPCom GmbH & Co., KG*,
    667 F.3d 1270 (Fed. Cir. 2012) .......................................... 42, 43

*In re Abele*,
    684 F.2d 902 (C.C.P.A. 1982)............................................. 23, 32

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) ..................................... passim

*In re Corio*,
    371 Fed. Appx. 352 (3rd Cir. 2010) ......................................41

*In re Grams*,
    888 F.2d 835 (Fed. Cir. 1989) ..................................... 28, 40

*In re Schrader*,
    22 F.3d 290 (Fed. Cir. 1994) ..................................................28

*Interactive Gift Express, Inc. v. CompuServe Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) .................................... 20, 43

*Kappes v. E.I. DuPont de Nemours & Co., Inc.*,
    Case No. 97-443-SLR, 1999 U.S. Dist. LEXIS 3580 (D. Del. Mar. 18, 1999) 41, 42

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
    132 S. Ct. 1289 (2012) ................................................ passim

*Mirror Worlds, LLC. v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ...............................................43

*MySpace, Inc. v. GraphOn Corporation*,
    672 F.3d 1250 (Fed. Cir. 2012) .................................... 18, 19

*Pandrol USA, LP v. Airboss Railway Products, Inc.*,
   320 F.3d 1354 (Fed. Cir. 2003) ............................................................41

*Parker v. Flook*,
   437 U.S. 584 (1978) ...................................................... 21, 23, 28, 35

*Pichler v. UNITE*,
   542 F.3d 380 (3rd Cir. 2008)..............................................................41

*PSC Computer Products, Inc. v. Foxconn International, Inc.*,
   355 F.3d 1353 (Fed. Cir. 2004) ................................................... 14, 18

*Research Corporation Technologies, Inc. v. Microsoft Corporation*,
   627 F.3d 859 (Fed. Cir. 2010) ..................................................... 32, 33

*Respironics, Inc. v. RIC Investments, Inc.*,
   Case No. 04-0336, 2008 U.S. Dist. LEXIS 1174 (W.D. Pa. Jan. 8, 2008)..........41

*Sage Products, Inc. v. Devon Industries, Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ...........................................................43

*SiRF Technology, Inc. v. International Trade Commission*,
   601 F.3d 1319 (Fed. Cir. 2010) ................................................. passim

*SmithKline Beecham Corporation v. Apotex Corporation*,
   439 F.3d 1312 (Fed. Cir. 2006) ...........................................................43

*Ultramercial, LLC v. Hulu, LLC*,
   657 F.3d 1323 (Fed. Cir. 2011) ................................................... 15, 18

*United States Surgical Corporation v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ................................................... 14, 18

*Vanderlande Industries Nederland BV v. International Trade Commission*,
   366 F.3d 1311 (Fed. Cir. 2004) ................................................... 14, 18

*Voter Verified, Inc. v. Premier Election Solutions, Inc.*,
   698 F.3d 1374 (Fed. Cir. 2012) ...........................................................13

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ...............................................................43

**Statutes**

35 U.S.C. § 102 ................................................................................19

35 U.S.C. § 103 ................................................................................19

**Rules**

District of Delaware Local Rule 7.1.3 ............................................ 41, 42

District of Delaware Local Rule 7.1.3(c)(1) .........................................41

District of Delaware Local Rule 7.1.3(c)(2) .........................................41

Federal Rules of Civil Procedure 56....................................................13

Federal Rules of Civil Procedure 56(c) ...............................................13

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Defendants | Defendants-Appellees submitting this brief, collectively |
| Plaintiff | CyberFone Systems, LLC |
| the '060 patent | U.S. Patent 8,019,060 |
| § 101 | 35 U.S.C. § 101 |
| § 102 | 35 U.S.C. § 102 |
| § 103 | 35 U.S.C. § 103 |
| Opp. Br. | Plaintiff's Answering Brief in Opposition to Defendants' Summary judgment motion, filed June 22, 2012, see JA000230-316 |
| App. Br. | Opening Brief of Plaintiff on Appeal, filed December 18, 2012 |

## STATEMENT OF RELATED CASES

No previous appeals have been taken from this case to any appellate court. This Court's decision on this appeal could directly affect *CyberFone Systems, LLC v. Cellco Partnership, Inc.*, 11-cv-827 (D. Del.), presently pending in the district court.

## STATEMENT OF THE ISSUES

1.    Whether the district court was required to construe the claims before resolving Defendants' summary judgment motion of invalidity even though Plaintiff did not (1) identify any disputed claim terms, (2) proffer any construction for any term, or (3) explain how any term's construction would impact the district court's § 101 analysis.

2.    Whether the district court correctly found the '060 patent invalid under § 101.

## STATEMENT OF THE CASE

Plaintiff is a non-practicing entity seeking to monetize the '060 patent and four related patents.  A000678 at 23-24.  Plaintiff has asserted the '060 patent against 81 companies, including all of the Appellees, in sixteen separate actions in the U.S. District Court for the District of Delaware.[1]  A000681 at 31, 36.  Over the

---

[1] The civil actions involving the '060 patent are 11-cv-827, 11-cv-829, 11-cv-831, and 12-cv-107 through 12-cv-120.  In 11-cv-827, Plaintiff also asserted four related patents (U.S. patents 5,805,676; 5,987,103; 6,044,382; and 7,334,024). A000679. Civil actions 12-cv-107 through 12-cv-120 have been resolved.

course of less than one year, Plaintiff has sued 150 companies in twenty-two

separate actions, accusing over 900 products and services of infringement.

A000680 at 30.

On March 6, 2012, the district court held a joint pretrial scheduling

conference, involving all parties in all actions.  At the conference, Defendants

advised the court that they wished to discuss at the next conference the possibility

of filing an early motion for summary judgment that the '060 patent is invalid

under § 101 for claiming patent ineligible subject matter.  A000681 at 36.

On March 8, 2012, the district court issued a Rule 26(f) order stating, *inter*

*alia*, that at the next status conference on May 15, 2012 "the court will hear the

defendants' presentation on the invalidity of the asserted claims of U.S. Patent No.

6,019,060."  A000686.

Defendants notified the district court and Plaintiff the day before the May

15, 2012 status conference that, in accordance with the Court's March 8, 2012

Order, they planned to seek leave to file a summary judgment motion on their

§ 101 defense.  A000688-689.

At the May 15 status conference, Defendants set forth the basis for their

proposed § 101 summary judgment motion, and explained that their motion could

properly be heard early in the case because its resolution required neither discovery

nor claim construction. A000697 at 26-28. Plaintiff's counsel did not oppose

Defendants' proposal for an early summary judgment motion:

> They're ready to file a brief so it's up to the Court. It does affect a lot of defendants, and resolution would get rid of—resolution in their favor would get rid of a number of defendants. We look to the Court for what your thinking is.

A000697 at 28-29. Plaintiff did not assert that either claim construction or

discovery was a prerequisite to the resolution of Defendants' proposed motion.

A000698 at 30. Rather, Plaintiff's only request was for extra time to respond. *Id.*

The Court thereupon set a schedule for briefing and argument on the summary

judgment motion. A000698 at 30-33.

Defendants filed their motion on May 22, 2012.[2]  A000167-169. Defendants

explained in their supporting brief why all of the claims of the '060 patent were

invalid under § 101, specifically addressing all three independent claims (1, 13,

and 18) and each of the dependent claims. A000179-180, A000185-194.

Plaintiff filed its opposition brief on June 23, 2012, arguing—for the first

time—that claim construction should be performed *prior* to resolution of

Defendants' § 101 motion. A000239-242. Critically, despite its newly raised

assertion that claim construction was necessary, Plaintiff did not: (1) identify any

---

[2] Defendants' summary judgment motion was also filed on behalf of other companies sued on the '060 patent. A000168. These other companies are not parties to this appeal either because their cases have settled or because they are parties in actions involving other patents.

claim term whose construction was in dispute; (2) proffer any construction for any term; or (3) explain how any term's claim construction would impact the district court's § 101 analysis. *Id.*

Instead, Plaintiff's opposition brief addressed *only* claim 1, which Plaintiff characterized as "the exemplary claim." A000238 at n.5. Indeed, Plaintiff's only reference to any claim other than claim 1 appears in a footnote that reads, in its entirety:

> Due to the extremely early stage of the litigation, CyberFone will not even be serving its preliminary infringement contentions for well over a month. *CyberFone will therefore focus on Claim 1 – the exemplary claim in the complaints – in this brief.* Claim 13 and 18 are the other independent claims. Various dependent claims also add limitations that are important to the section 101 analysis. For example, claim 23 requires system claim 18 to include a portable telephone as part of the first transaction tier.

A000238 at n.5 (emphasis added).

In their reply brief, Defendants observed that by addressing only claim 1 and labeling it "exemplary," Plaintiff had implicitly conceded that if claim 1 were invalid, the remaining claims also were invalid. A000321.

Plaintiff then sought leave to file a surreply, which the district court granted. A000003, A000332-635. Plaintiff's surreply was limited to arguing the effect of Defendants' responses to Plaintiff's requests for admissions, and the applicability of the then-recent panel decision in *CLS Bank International v. Alice Corporation Pty. Ltd.*, 685 F.3d 1341 (Fed. Cir. 2012), *vacated by, rehearing, en banc, granted*

*by CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 2012 U.S. App. LEXIS 20906 (Fed. Cir. Oct. 9, 2012). A000341-346. However, Plaintiff's surreply still did not attempt to rebut Defendants' arguments of invalidity by addressing any claim other than claim 1; nor did it propose any construction of any claim terms.

Plaintiff did not attempt to defend the patent eligibility of any claims other than claim 1 until oral argument on July 31, 2012—and even then it only discussed claims 18 and 23. A000652 at 36-38; A000654 at 42 to A000655 at 48.[3] Although Plaintiff had not addressed claim 18 in any of its briefs, during oral argument Plaintiff spent at least half of its time discussing that claim. *Id.* In response, Defendants noted that Plaintiff had waived arguments regarding claims 18 and 23 by failing to address them in any manner in its briefs, but nevertheless substantively responded to Plaintiff's arguments. A000655-57. The district court noted Plaintiff's new focus on claim 18 and explicitly asked whether it should confine its analysis to claim 1, because Plaintiff had confined *its* arguments to claim 1 in its briefs. A000657 at 57 to A000658 at 58. Plaintiff argued that the Court should consider claim 18, but provided no supporting legal authority for why it had not waived its arguments directed to that claim. A000657-658.

On August 16, 2012, the district court issued a memorandum opinion and order granting Defendants' summary judgment motion, and on August 17, 2012,

---

[3] Plaintiff did not address claim 13, or any dependent claim other than claim 23.

entered judgments in case numbers 11-cv-829 and 11-cv-831 in favor of Defendants. A000001-21. In its opinion the district court properly concluded that, as a threshold matter, it could proceed to a summary judgment determination without claim construction because Plaintiff had not explained "how claim construction might alter [the § 101] analysis or why the court would lack a full understanding of the claimed subject matter if it did not first construe the claims." A000013-14. The district court then concluded that claim 1 did not recite patent-eligible subject matter under § 101 because it both failed the machine-or-transformation test and was too abstract. A000014-21. Further, the district court correctly held that it did not need to separately address claims 13 or 18 because Plaintiff's briefs had addressed only claim 1. A000015 at n.6.

## STATEMENT OF FACTS

The '060 patent is directed to the general concept of (1) "obtaining" information as part of some unspecified "transaction," (2) organizing that information into subparts (referred to in the patent as "exploding" the transaction or "separat[ing]" the transaction information), and (3) "sending" those subparts to different destinations. Further, it claims the idea of obtaining, organizing and sending (or forwarding) data, without tying it to a particular machine or reciting any type of transformation said data. Importantly, the claims do not add any information that would limit them to a particular field (or fields) of use.

6

The '060 patent contains three independent claims:  method claims 1 and 13, and system claim 18.  A000165-166.  Each of these claims covers only the concept of gathering, organizing, and forwarding unspecified information (referred to as data).  As discussed above, Plaintiff labeled claim 1 "the exemplary claim" and limited its opposition briefs to a discussion of that single claim.  A000238 at n.5.  Claim 1 reads as follows (paragraphing and material in brackets added for clarity):

> 1. A method, comprising:
>
> [i] obtaining data transaction information entered on a telephone from a single transmission from said telephone [*i.e.* **the data gathering step**];
>
> [ii] forming a plurality of different exploded data transactions for the single transmission, said plurality of different exploded data transaction indicative of a single data transaction, each of said exploded data transactions having different data that is intended for a different destination that is included as part of the exploded data transactions, and each of said exploded data transactions formed based on said data transaction information from said single transmission, so that different data from the single data transmission is separated and sent to different destinations [*i.e.* **the organizing step**]; and
>
> [iii] sending said different exploded data transactions over a channel to said different destinations, all based on said data transaction information entered in said single transmission [*i.e.* **the forwarding data step**].

A000165.

The first step [i] in claim 1 is an obtaining, or gathering step.  Information/ data is gathered or obtained from a single telephone transmission.  No structure is recited for performing this step; the telephone is merely the source of information. The second step [ii], requires taking the obtained information/data, and separating

or organizing it into different subparts or transactions.  No structure is recited for

performing this step, and there is no suggestion that the data is transformed or

altered simply by being organized or "separated."  The third step [iii] requires

sending different information/data transactions to different destinations, over a

"channel."  Claim 1 thus involves nothing more than an abstract method of

obtaining information from a telephone transmission, organizing that data into

different subparts, and sending the different subparts to different destinations over

a channel.  No particular machine is disclosed for performing any of these steps,

and the use of a telephone as the source of data does not make this claim patent

eligible.

Claim 1's steps, as illustrated in Figure 3 of the '060 patent, fall well short of

disclosing any patent-eligible process.  Figure 3 shows nothing more than a single

data transaction being "exploded" or separated into a plurality of different subparts

or "fields," and then being routed to different destinations/ databases:



A000144; *see also* A000158 at col. 10, lines 3-8 (describing how data is "exploded").

As an example of this abstract concept, the patent describes a transaction in which information input during a patient's visit to a physician's office (*i.e.,* the gathering step), is organized by "exploding" it into subparts (*i.e.,* the organizing step), which are forwarded to different destinations such as an insurance company or the office's patient records (*i.e.,* the forwarding step). *See* A000164 at col. 22, lines 25-37.  The patent suggests using this same concept for a myriad of other "transactions," including "bank transactions," "pay[ing] household bills," "turning on and off various household devices," "personal scheduling," "tax record keeping," "provid[ing] direct access to travel information," "interacting with voice mail systems," "calling the police or fire department," "and the like."  A000164 at col. 22, line 46, to A000165 at col. 24, line 17.

Claim 1 (and the other claims) do not focus on any specific transaction type, but instead target the generic concept of gathering *any* transaction data, organizing it into subparts, and then forwarding the subparts to different destinations.  Indeed, Plaintiff has asserted the '060 patent against a diverse array of products and services, including those of airlines, sports leagues, social media companies, home security companies, television studios, cable service providers, online retailers, and cellular telephone service providers—essentially claiming that the patent covers

produces and services in any field of commercial endeavor. *See, e.g.,* A000700-707.

Claims 13 and 18 read as follows (material in brackets added for clarity):[4]

13.    A method, comprising: [i] obtaining data transaction information [*i.e.*, **data gathering step**]; [ii] based on said data transaction information, forming a plurality of different, exploded data transactions, said plurality of different exploded data transactions indicative of a single data transaction represented by said data transaction information, each of the exploded transactions having different data and having a different destination, where destination information indicative of multiple destinations for said exploded data transactions is included as part of the single data transaction, and each data transaction formed based on said data transaction information [*i.e.*, **organizing data step**]; [iii] sending said different exploded data transactions over a channel to respective destinations, each respective destination represented by different destination information [*i.e.*, **forwarding data step**]; and [iv] receiving data from at least one of said destinations, which data is used as part of the data transaction, and is sent to a second of said destinations different than said one of said destinations, and where said second of said destination is represented by second destination information in said single data transaction.

18. A data transaction system comprising: [i] a first transaction tier, operating to capture a data transaction from a user, said data transaction including at least one request for information from at least one remote server [*i.e.*, **data gathering step**]; [ii] a second transaction tier, operating to convert the data transaction into multiple different requests, based on said request for information, where said second tier converts, from a single data transaction from the user, a plurality of different exploded data transaction indicative of said single data transaction each of said exploded data transactions having different

---

[4] Although Plaintiff failed to address any claims other than claim 1 in its opposition briefs, thereby waiving any argument relating to the remaining claims (see Section IV, *infra*), for the sake of completeness this brief discusses independent claims 13, 18, and the dependent claims.

data and a different destination that is included as part of the exploded data transactions, and each of said exploded data transaction formed based on said data transaction information from said single transmission and representing said different data in the single transmission that is intended for different servers [***i.e.*, organizing data step]**; and [iii] a third tier, further exploding at least plural of requests from said second transaction tier into third tier transaction requests for specific information from specific remote servers, where each of the third tier transaction requests is specific to a specified application [***i.e.*, a further organizing data step]**.

A000166.

Claim 13 is substantially similar to claim 1, except that it does not require that the information be obtained from a telephone.  A000166 at col. 25, line 37. Claim 13 further comprises a fourth step wherein data is received from one of the destinations and sent/forwarded to another.  *Id.* at col. 25, lines 53-58.  This claim does not add any machine or transformation of data that would make it patent eligible under § 101.

Claim 18 is a system claim comprising functional "tiers" that perform steps similar to those in claims 1 and 13.  *Id.*  The first tier requests/obtains data, like the first steps in claims 1 and 13, from a remote server.  *Id.* at col. 26, lines 11-14.  The second tier organizes/converts the data into different subpart transactions intended for different servers, and the third tier converts the data from the second tier into further subpart transactions.  *Id.* at col. 26, lines 14-30.  Similar to claim 13, and as discussed below, the addition of tiers and the mention of servers fails to render this claim patent eligible.

11

The dependent claims in the '060 patent use a few general-purpose computer-related terms, such as server, database, and modem, to identify the origins or destinations of some of the data processed. A000165-166. Yet none of the claims refer to any special-purpose computer (or any other special-purpose hardware) that would make them patent eligible.

## SUMMARY OF ARGUMENT

The district court properly decided invalidity under § 101 without claim construction because there is no claim construction dispute relevant to this issue. In the proceedings before the district court, not only did Plaintiff not object to Defendants' request to file their motion for summary judgment without claim construction, but Plaintiff never identified a single claim term whose construction might be in dispute, failed to proffer any construction for any term, and failed to explain how the resolution of the § 101 issue depended on the construction of any term. Even on appeal, Plaintiff has not presented any proposed claim construction that it deems necessary, much less any argument as to *how* that claim construction would render the claims of the '060 patent valid under § 101. (*See* Section II.)

The district court also correctly decided that the subject matter recited in claim 1 is not patent-eligible under § 101. It applied the correct legal standard to the § 101 analysis, parsed the language of claim 1 with care, and concluded, based upon proper legal analysis, that claim 1 is not patent-eligible. As discussed below,

the district court's ruling was correct and should therefore be affirmed.  (*See* Section III.)

Moreover, the district court's judgment should be affirmed for the additional reason that Plaintiff waived any arguments relating to claims other than claim 1. Plaintiff concedes in its brief that it treated claim 1 as "exemplary" in its briefing before the district court, failing to substantively discuss any other claim.  As such, its attempt to substantively argue other claims at the hearing came too late and was insufficient to salvage those claims.  But even if this Court were to consider claims other than claim 1, they would also fail to claim patent eligible subject matter under § 101.  (*See* Section IV.)

For all of these reasons and as set forth below, the district court's ruling should be affirmed in its entirety.

## **ARGUMENT**

I.    **Standard of Review and Legal Standards for Summary Judgment.**

This Court reviews orders granting summary judgment *de novo*, applying the same standard as the district court under Fed. R. Civ. P. 56.  *See, e.g.*, *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1379 (Fed. Cir. 2012).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Whether a claim is drawn to patent-eligible subject matter under

§ 101 is an issue of law and therefore particularly amenable to resolution on summary judgment. *See, e.g.*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330-34 (Fed. Cir. 2012); *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1320-24 (Fed. Cir. 2012); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369-76 (Fed. Cir. 2011).

## II.    Resolution of Defendants' Summary Judgment Motion Did Not Require Claim Construction.

### A.    The District Court Properly Decided the § 101 Issue Without Claim Construction.

Claim construction is required only when the meaning or scope of technical terms and words of art are unclear, and disputed such that a resolution is required to determine the issue before the court. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *see also Vanderlande Indus. Nederland BV v. ITC*, 366 F.3d 1311, 1323 (Fed. Cir. 2004) (no reason for ALJ to formally construe an undisputed claim limitation); *PSC Computer Prods., Inc. v. Foxconn, Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004) (district court did not construe claims because their meaning was not in dispute); *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) (district court was not required to conduct a complete claim construction before addressing infringement; it needed only to construe the claim to the extent necessary to determine the issue). Thus, "claim construction is not an inviolable prerequisite to a validity

14

determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011), *vacated sub nom, remanded by WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012) (same).

Here, the district court correctly concluded that it could proceed without claim construction because Plaintiff did not explain how claim construction might alter the § 101 analysis, or "why the court would lack a full understanding of the claimed subject matter if it did not first construe the claims." A000013-14. It was incumbent upon Plaintiff to oppose Defendants' motion by identifying any specific facts and material disputes that precluded summary judgment, including an identification of any specific claim terms it disputed and the necessity for any claim construction. Plaintiff failed to do so. A000239-242. In its opposition brief, and in its surreply brief, Plaintiff did not (1) identify any disputed claim terms, (2) proffer any construction of any term, or (3) explain how the resolution of the § 101 issue depended on a particular construction of any term. All Plaintiff did was identify claim limitations that were "significant to the Section 101 analysis" and make general statements about the necessity of claim construction. *See, e.g.*, A000236. Thus the district court correctly concluded (and this Court should also find) that there was no need to perform claim construction because there was no claim construction dispute that would affect the court's § 101 analysis.

Plaintiff had ample opportunity to develop and raise any claim construction disputes with the district court during the five (5) months preceding resolution of Defendants' § 101 motion. Indeed, Plaintiff had ample notice that Defendants were seeking early summary judgment. As discussed above, Defendants raised the § 101 issue at the first scheduling conference on March 6, 2012, and the district court then advised the parties in its March 8 Order that, at the May 15, 2012 conference, "the Court [would] hear defendants' presentations on the invalidity of the asserted claims of the U.S. Patent No. 6,019,060." A000686 at 36. When Defendants outlined the basis for their proposed summary judgment motion at the May conference, and noted that their motion would not require claim construction, Plaintiff did not object to proceeding with briefing the invalidity issue without ever raising the need for claim construction. A000697 at 28-29.

Although Plaintiff repeatedly criticizes the district court for not performing claim construction,[5] and frequently asserts that a "fundamental dispute concerning the scope of the claims" exists,[6] Plaintiff's appeal brief itself undermines any suggestion that claim construction was necessary before the district court resolved the summary judgment motion. Even on appeal Plaintiff does not present any

---

[5] *See., e.g.*, App. Br. at 13-14, 17-19.

[6] App. Br. at 2; *see also* App. Br. at 4 ("The district court also ignored the fact that the scope of the claims was in fundamental dispute…."); 12 n.5 ("fundamental disagreement as to scope"); 14 ("legitimate dispute over the scope of the claims"); 24 ("the scope of the claims was in fundamental dispute").

proposed claim construction, let alone a substantive argument as to *how* that claim

construction would alter the § 101 analysis or render the claims of the '060 patent

valid.  Plaintiff's sole argument is that the construction of three limitations in claim

1:  (1) "obtaining data transaction information entered on a telephone from a single

transmission from [a] telephone," (2) "forming a plurality of different exploded

data transactions," and (3) "sending []different exploded data transactions over a

channel":

> would make it clear that the invention being claimed was limited and
> specific, and not abstract.  Specifically, a construction of these terms
> would show that the claim was limited to receiving data from a
> telephone, using a database server to explode the data received from a
> single transmission from the telephone, and sending those exploded
> transmissions over a channel to other database servers.

App. Br. at 18.

Plaintiff has not identified a claim construction dispute that would alter the

§ 101 analysis; on the contrary—it merely has rearranged the language in claim 1

and asked this Court to substitute the generic term "database server" (a term not

found in claim 1) for the even more generic term "destination" (the term used in

claim 1).  Plaintiff makes similarly flawed arguments with regard to claims 18 and

23, App. Br. at 18-19, which the Court need not address for the waiver reasons

discussed below in Section IV.

Because Plaintiff never proffered any claim construction for any term in

claim 1—let alone identified a particular construction that would render the subject

matter of that claim patent eligible under §101—the district court correctly concluded that claim construction was unnecessary and properly decided Defendants' motion without it. *See Bancorp,* 687 F.3d at 1273; *Ultramercial*, 657 F.3d at 1325; *Vanderlande Indus.*, 366 F.3d at 1323; *PSC Computer*, 355 F.3d at 1357; *Ballard*, 268 F.3d at 1323; *U.S. Surgical*, 103 F.3d at 1568.

Plaintiff's reliance on *Bancorp* for the proposition that claim construction must precede any invalidity analysis (App. Br. at 19) is misplaced. In *Bancorp*, there *were* disputed claim terms and the parties had submitted a joint claim construction statement addressing them. *Bancorp*, 687 F.3d at 1272. On appeal the Defendant argued that the claims were not patent eligible even under the patentee's proposed constructions. *Id.* at 1274. This Court did not fault the district court for declining to construe the claims (*id*. at 1273), but proceeded to decide the claim construction dispute that was relevant to the § 101 issue (whether or not the claims required a computer, *id.* at 1274-75). It then affirmed the district court's decision that the claims were not patent eligible. *Id*. at 1281. *Bancorp* thus is distinguishable because, here, Plaintiff has not identified *any* claim terms in dispute or *any* constructions that would affect the § 101 analysis.

Plaintiff's reliance on *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250 (Fed. Cir. 2012), is also misplaced. Contrary to Plaintiff's assertion (App. Br. at 13, 17), in *MySpace* this Court did not address whether a § 101 analysis should be

performed before claim construction. Rather, the Court affirmed the district

court's grant of summary judgment of invalidity under §§ 102 and 103. *MySpace*,

672 F.3d at 1257-58. While the dissenting judge proposed that the claims be found

invalid under § 101, the majority noted in response that the parties had not raised,

and the district court had not decided, whether the claims were invalid under § 101,

*id*. at 1258, holding that compliance with § 101 was not a necessary antecedent to

the court's consideration of validity under §§ 102 or 103, *id.*

Finally, Plaintiff did not create a claim construction dispute by pointing to

responses to requests for admissions that deny infringement. App. Br. at 24-26.

As this Court held in *Bancorp*, it is irrelevant to and not inconsistent with the § 101

analysis that a defendant has denied infringement. *Bancorp*, 687 F.3d at 1280.

### B. This Court Should Affirm the District Court's Judgment Because Plaintiff Waived Its Right to Claim Construction by Failing to Present Any Claim Construction Dispute to the District Court.

This Court should affirm the district court's conclusion that the patent claims

are invalid under § 101 without the need for claim construction because Plaintiff

waived its right to claim construction by failing to raise any claim construction

dispute before the district court. It would be unfair to permit Plaintiff to demand

claim construction for the first time on appeal. Nowhere in the record below, or in

its opening appeal brief, did Plaintiff proffer any claim construction for any term

that would affect the Court's § 101 analysis. Simply put, there *is* no claim

construction dispute on the record before this Court that would affect the § 101

analysis.  Indeed, by failing to identify any claim construction dispute or offer any

claim constructions to the district court or in its opening appeal brief, Plaintiff has

waived any right to seek reversal on such grounds.  *See Eli Lilly and Co. v.

Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004)[7] (Where a party never asked

the district court to construe a claim and never offered a construction, that party

waived its right to ask the Federal Circuit to request a construction of that claim.);

*see also Ballard*, 268 F.3d at 1363 (party waives arguments relating to the proper

construction of a claim by not presenting those arguments in its brief); *Interactive

Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1346-47 (Fed. Cir. 2001)

(waiver doctrine precludes a party from adopting a new claim construction position

on appeal).

## III.    The District Court Correctly Concluded that the Subject Matter Recited in Claim 1 Is Not Patent Eligible Under § 101.

### A.    The District Court Applied the Correct Legal Standard.

The district court properly analyzed and applied the guidance from the

Supreme Court and this Court to find the '060 patent claims invalid under § 101.

As the district court discussed, § 101 provides that patentable subject matter

extends to "new and useful process[es], machine[s], manufacture, or

---

[7] Federal Circuit law controls waiver in the context of claim construction
arguments.  *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250-51 (Fed. Cir.
2005).

composition[s] of matter." 35 U.S.C. § 101; *see* A000007. In *Bilski v. Kappos*, 130 S. Ct. 3218 (2010) (*Bilski II*), the Supreme Court reiterated that its precedents "provide three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski II*, 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). "The concepts covered by these exceptions are 'part of the storehouse of knowledge of all men... free to all men and reserved exclusively to none.'" *Id.* (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court reaffirmed that "abstract intellectual concepts are not patentable," 132 U.S. at 1293, and that abstract concepts do not become patentable by limiting them to a particular technological environment or by adding insignificant post- or pre-solution activity (collectively, "extra-solution activity"):

> [T]he prohibition against patenting abstract ideas "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment" or adding "insignificant *postsolution* activity."
>
>                     ***
>
> Purely "conventional or obvious" "*[pre]-solution* activity" is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law.

*Prometheus*, 132 S. Ct. at 1294, 1299 (emphasis added, brackets in original) (quoting *Bilski II*, 130 S. Ct. at 3220, and *Parker v. Flook*, 437 U.S. 584, 590 (1978)).

21

In *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ("*Bilski I*"), this Court articulated a "machine-or-transformation" test ("MOT test") for determining patent eligibility under § 101. *Bilski I*, 545 F.3d at 961. Under the MOT test an applicant can satisfy § 101 "either by showing that his claim is vital to a particular machine, or by showing that his claim transforms an article." *Id*. Moreover, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope," and "the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity." *Id*. at 961-962.

To impose a meaningful limit on the scope of a claim, the machine must be integral to the claim and play a significant part in its performance. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010) ("We hold that the claims at issue are properly directed to patentable subject matter as they explicitly require the use of a particular machine (a GPS receiver) and could not be performed without the use of such a receiver."). Claims to patent-ineligible abstract ideas do not become patentable merely by reciting general purpose computer components for doing no more than their basic functions. *See Bancorp*, 687 F.3d at 1278-80 (claims did not become patent eligible by reciting general purpose computer components for performing calculations and storing information); *Dealertrack,* 674 F.3d at 1333-34 (adding "computer aided" to method of processing information did not make

claim patent eligible); *Fort Props.*, 671 F.3d at 1323-24 (use of "computer" to

generate "deedshares" did not make method claim patent eligible); *Cybersource*,

654 F.3d at 1370 (the fact that the Internet was the source of the data did not make

method claim directed to obtaining and organizing data patent eligible).

 This Court in *Bilski I* further stated that the "transformation" prong of the

MOT test requires the transformation of an article into a different state or thing,

and the transformation must be central to the claim. *Bilski I*, 543 F.3d at 962.

Physical transformation of physical objects or substances is patent-eligible subject

matter. *Id*. Transformation of data representing a physical object into a visual

depiction of that object also is patent-eligible subject matter. *Id*. at 962-63

(discussing *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982)). However, mere

transformations of legal rights, business risk, or other such abstractions do not

constitute "transformations" under the test and are not patent-eligible subject

matter. *Id*. at 963-64.

 In *Bilski II*, the Supreme Court approved of the MOT test as a useful test for

analyzing whether an invention is a "process" under § 101, but held that it is not

the exclusive test. *Bilski II*, 130 S. Ct. at 3277. The Supreme Court directed the

courts to look to the "guideposts" in *Gottschalk v. Benson*, 409 U.S. 63 (1972),

*Flook*, and *Diamond v. Diehr*, 450 U.S. 175 (1981), to determine whether a process

is patent eligible under § 101. *Id*., 130 S. Ct. at 3231.

Applying these standards, the district court correctly concluded that claim 1 failed the MOT test and was drawn to an abstract idea.  A000012-21.

## B.    Plaintiff Has Not Identified Any Claim Language that the District Court Failed To Consider.

Contrary to Plaintiff's assertion (App. Br. at 4, 22-24), the district court did not ignore or misapprehend any claim limitation.  On the contrary, the district court carefully considered and was "cognizant of [this Court's] admonition" in *CLS Bank* against paraphrasing and oversimplifying the claim language when performing the § 101 analysis.  A000015.  It looked closely at *all* of the language in claim 1 and then divided the claim into its three relevant steps:

> Claim 1 recites a three step process. The first entails "obtaining data transaction information entered on a telephone from a single transmission."  In other words, the first step involves obtaining or capturing data.  The second step entails "forming a plurality of different exploded transactions" from the single transmission.  In other words, the second step involves the sorting or organizing of data into data subsets.  The third and final step entails "sending said different exploded data transactions over a channel to different destinations."  In other words, the last step involves sending data to a storage location.

A000015-16.  Thus, the district court properly considered all of the claim limitations in its analysis.

Although Plaintiff accuses the district court of improperly paraphrasing the claim into abstract concepts so it could find the claim abstract, Plaintiff fails to identify *any* limitation that the district court did not address correctly.  In fact, the

district court expressly analyzed every claim limitation that Plaintiff raised, including the "telephone" and "channel" limitations, and concluded that these limitations did not render the claim patent eligible. *See* A000002, A000015-16, A000019-20 (discussing telephone); A000015-16 (discussing channel). The district court did not generalize the claim into abstract summaries, as Plaintiff contends. On the contrary, the district court carefully reviewed all of claim 1's language and concluded that it covered nothing more than the abstract concept of gathering data from a telephone, organizing it into subparts, and forwarding the subparts to destinations. A000010-21.

## C. The District Court Correctly Concluded that Claim 1 Fails the Machine-or-Transformation Test

Contrary to Plaintiff's contention, the district court correctly concluded that claim 1 fails both prongs of the MOT test.

### 1. No Specific Machine Performs Any of the Steps.

The district court correctly observed that claim 1 recites a three-step method for gathering data, organizing data, and forwarding the organized data to a storage location, and correctly concluded that claim 1 does not recite any specific machine that performs these steps. A000012-15.

In finding that claim 1 fails the machine prong, the district court carefully analyzed this Court's case law on the MOT test and recognized that "[i]t is apparent, when comparing *Bancorp* and *SiRF*, that a spectrum exists with respect

25

to computer-based implementation limitations." A000013. Claim 1 does not expressly recite a computer for performing the gathering, organizing, and forwarding steps of the method. But to the extent one could be implied, the district court correctly found that it:

> exists on the *Bancorp* end of the spectrum. The machine is just a general purpose computing device being asked to do some unspecified sorting function. Claiming a generic "computer-aided" sorting process is insufficient under the machine prong of the [MOT test]. *See Dealertrack*, 674 F.3d at 1333. Essentially plaintiff has claimed nothing more than the idea of sorting via machine.

A000015.

Plaintiff does not contest the district court's conclusion that nothing more than a general purpose computer would perform claim 1's gathering, organizing, and forwarding steps. Instead, it argues that two specific claim terms— "telephone" and "channel"—are specific "machines" that make claim 1 patent eligible under the MOT test. App. Br. at 4, 12, 14, 27-30.

The district court properly rejected Plaintiff's argument that claim 1's reference to a "telephone" as the *source* of the input data and to a "channel" as the *path* for the output data amounted to claiming a specific machine to perform that method. The district court correctly observed that the telephone is "the only machine plainly referenced in claim 1" and correctly concluded that it does not satisfy the machine prong of the MOT test because it "is not an integral part of the claim; it simply functions as a means for collecting data whereas the real focus of

the claim is the sorting and storing." A000014. Plaintiff has not demonstrated how the telephone plays any significant part in performing the claim other than as the source of information.

The district court solidly grounded its conclusion on this Court's precedent that "mere data-gathering steps cannot make an otherwise nonstatutory claim statutory." *Cybersource*, 654 F.3d at 1370. In *CyberSource*, the patentee argued that the claimed method was tied to a machine because it involved "verifying the validity of a credit card transaction over the Internet." *Id*. This Court disagreed: "The Internet is *merely described as the source of the data*." *Id*. (emphasis added). Likewise, Plaintiff's claim 1 is directed to a method of "obtaining" transaction data from a telephone, organizing that data, and "sending" the transaction data to destinations. Plaintiff does not argue that the telephone performs any of these three claimed steps. Instead, the telephone, just like the Internet recited in the *CyberSource* claim, is "merely described as the source of the data" that is obtained, organized, and then sent. *Id*.

Furthermore, *CyberSource* followed *Prometheus* and *Bilski I* in holding that insignificant extra-solution activity does not transform an abstract claim into a patentable-eligible one. *See Prometheus*, 132 S. Ct. at 1299 ("Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law.")

27

(brackets in original); *Bilski I*, 545 F.3d at 957 & n.14 ("[T]he recited machine or transformation must not constitute mere 'insignificant post-solution activity.' … [T]he Court's reasoning is equally applicable to any insignificant extra-solution activity regardless of where and when it appears in the claimed process.") (citing *Flook*, 437 U.S. at 590; *In re Schrader*, 22 F.3d 290, 294 (Fed. Cir. 1994); *In re Grams*, 888 F.2d 835, 839-40 (Fed. Cir. 1989)).  The data gathering process rejected by this Court in *CyberSource* and the district court in this case is nothing more than insignificant pre-solution activity and does not render the claim eligible under § 101.

Although Plaintiff relies heavily on this Court's decision in *SiRF*, the district court was correct that *SiRF* is distinguishable.  The claims at issue in *SiRF* were directed to methods for calculating the position of a GPS receiver.  *SiRF*, 601 F.3d at 1323.  The claimed methods recited numerous detailed steps that "could not be performed without the use of a GPS receiver." *Id.* at 1331-32.[8]  Analyzing the machine prong of the MOT test, this Court explained that for "the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a

---

[8] For example, one claim in *SiRF* recited: "providing pseudoranges that estimate the range of the GPS receiver to a plurality of GPS satellites; providing an estimate of an absolute time of reception of a plurality of satellite signals; providing an estimate of a position of the GPS receiver; providing satellite ephemeris data; computing absolute position and absolute time using said pseudoranges by updating said estimate of an absolute time and the estimate of position of the GPS receiver." *SiRF*, 601 F.3d at 1331.

significant part in permitting the claimed method to be performed." *Id*. at 1333. This Court found that the GPS receiver satisfied this test because the receiver was "*essential* to the operation of the claimed methods," "the methods at issue *could not be performed* without the use of a GPS receiver, and it would be *impossible*… to determine the position of the GPS receiver whose position is the precise goal of the claims." *Id.* at 1332-33 (emphasis added).

The district court correctly concluded that the facts of *SiRF* contrast sharply with those here in which "the telephone is not an integral part of the claim; it simply functions as a means for collecting data whereas the real focus of the claim is the sorting and storing." A000014. The telephone is mentioned in claim 1 as a source of the data collected, but not as performing the three claimed steps of obtaining the data from a telephone, organizing the data, and sending it to a destination. Further, whereas the *SiRF* GPS receiver was essential to the claimed methods of calculating the position of a GPS receiver, Plaintiff's claimed steps of gathering, organizing, and forwarding transaction data could be performed regardless of the source of the data. In fact, claim 13, which is similar to claim 1, does not require that the telephone be the source of the transaction data, which demonstrates that the telephone is not "essential" to the claimed invention. *SiRF*, 601 F.3d at 1333. The telephone, which is merely the data source, constitutes at most insignificant pre-solution activity, and does render claim 1 patent-eligible.

In *Bancorp*, this Court rejected a similar effort to force-fit the *SiRF* decision onto a situation in which the alleged "machine" was not integral to the actual method. There, this Court held that while certain method claims expressly required the steps be performed by a computer, "[t]hat misses the point. It is the management of the life insurance policy that is integral to each of [Bancorp's] claims at issue, not the computer machinery that may be used to accomplish." *Bancorp*, 687 F.3d at 1279 (internal quotations removed, brackets original). Likewise, it is the gathering, organizing, and forwarding of transaction data that is the focus of Plaintiff's claim 1—not the telephone, which is merely listed as the source of the data.

The district court also correctly rejected Plaintiff's assertion that claim 1's reference to sending the output data "over a channel" could satisfy the machine prong. The court noted that Plaintiff "summarily" made this argument and did "not indicate what type of machine is required." Indeed, Plaintiff failed to propose any construction of "channel" to the district court (and still fails to do so on appeal) that would limit it to anything other than a generic path over which information would travel to its destination after the final process step of "sending" was complete. Even if "channel" did refer to a specific machine, it is at best insignificant "post-solution activity," occurring after the method steps of obtaining, organizing, and sending are completed. Such post-solution activity also does not

render claim 1 patent eligible. *Prometheus*, 132 S. Ct. at 1299; *Bilski I*, 545 F.3d at 957.

### 2.    None of the Steps Transform Anything.

The district court also properly ruled that the '060 patent claims do not effect a patentable transformation, relying on this Court's decisions that manipulating data does not meet the requirement to "transform[] a particular article into a different state or thing." *Bilski I*, 545 F.3d at 957.  For example, the district court looked at *CyberSource*, where this Court held that the "*mere collection and organization of data* regarding credit card numbers and Internet addresses is insufficient to meet the transformation prong of the [MOT] test."  A000011 (quoting *CyberSource*, 654 F.3d at 1367) (emphasis added).  Likewise, the district court cited to this Court's decision in *Bancorp*, which affirmed the district court's finding that "the claims do not effect a transformation, as they 'do not transform the raw data into anything other than more data and are not representations of any physically existing objects."  A000011 (quoting *Bancorp*, 687 F.3d at 1273).  As this Court held *en banc* in *Bilski I*, "[p]urported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Bilski I*, 545 F.3d at 963.  This Court held that Bilski's claims, directed to

manipulating data about "transactions" for hedging risk, did not amount to transforming a physical article or data representative of a physical article. This Court distinguished Bilski's claims from a claim found patentable in *Abele*, where electronic data about physical objects was transformed into a visual depiction of the objects. *Id.* at 962-63 (discussing *Abele*, 684 F.2d at 908-09).

At most, claim 1 amounts to organizing data into different transactions that, like the claims found wanting in *Bilski I*, do not involve transformation of "an article to a different state or thing," but rather organize data about "legal obligations or relationships, business risks, or other such abstractions." *Bilski I*, 545 F.3d at 963. Indeed, there cannot be any transformation of the data in Plaintiff's claim 1 if it is merely "exploded" or "separated" into different data subsets without any additional language suggesting a change in the data or any "technological advance" that is being accomplished. *See Bancorp*, 687 F.3d at 1279.

Plaintiff's reliance on this Court's decision in *Research Corporation Technologies, Inc. v. Microsoft Corporation*, 627 F.3d 859 (Fed. Cir. 2010), also is misplaced. In *Research Corp.*, the patent claims, much like those found patentable in *Abele*, were directed to a method of transforming data representing an original digital image into data that simulates or approximates the original digital image when reproduced on a computer display or printer. *Research Corp.*, 627 F.3d at

868-69. That is a far cry from claim 1, which does not transform data "into a different state or thing," as in *Research Corp.*, but merely organizes data into subparts for a generic "data transaction." A000165. Further, in claim 1 of the '060 patent, the data received does not represent a particular article (*e.g.*, an original digital image) as in *Research Corp.*

Because claim 1 does not transform articles, but instead merely organizes or sorts data about an abstract "transaction," the district court correctly concluded that claim 1 fails the transformation prong of the MOT test.

### D.    The District Court Correctly Concluded that Claim 1 Is Drawn to an Abstract Concept.

Claim 1's failure to meet the MOT test provides a "useful and important clue" that the patent does not claim patent-eligible subject matter. *Bilski II*, 130 S. Ct. at 3227. Nonetheless, because the Supreme Court has held that the MOT test is not the exclusive inquiry, the district court went further and correctly concluded that claim 1 encompasses "nothing more than a disembodied concept of data sorting and storage" and, therefore, found "the abstract nature of this patented process to be manifestly apparent." A000015.

The district court's decision is consistent with this Court's prior precedents concerning patent claims directed to processing or organizing data. For example, in *Dealertrack*, this Court reviewed claims directed to a computer-aided method for collecting credit application data, selecting part of the data, and forwarding that

33

data to another location.  This Court affirmed summary judgment that these claims

reflected an improper effort to preempt the abstract concept of a "clearinghouse"

for gathering, organizing, and forwarding information:

> Dealertrack's claimed process in its simplest form includes three steps: *receiving data* from one source (step A), *selectively forwarding the data* (step B, performed according to step D), and *forwarding reply data* to the first source (step C).  The claim "explain[s] the basic concept" of processing information through a clearinghouse, just as claim 1 in *Bilski II* "explain[ed] the basic concept of hedging."  *See Bilski II*, 130 S. Ct. at 3231.  The steps that constitute the method here do not "impose meaningful limits on the claim's scope."  *Bilski I*, 545 F.3d at 961–62 (citing *Benson*, 409 U.S. at 71–72).  Neither Dealertrack nor any other entity is entitled to wholly preempt the clearinghouse concept.

*Dealertrack*, 674 F.3d at 1333 (emphasis added).

Like the claims in *Dealertrack*, claim 1 of the '060 patent is directed to the

abstract concept of gathering, organizing, and forwarding data.  Specifically,

information is *gathered* by "obtaining data transaction information entered on a

telephone from a single transmission from said telephone."  The data is then

*organized* by selectively dividing the gathered transaction data into subparts

("forming a plurality of different exploded data transactions for the single

transmission … each of said exploded data transactions having different data that

is intended for a different destination …").  And, finally, the organized transaction

data is *forwarded* to destinations ("sending said different exploded data

transactions over a channel to said different destinations, all based on said data

transaction information entered in said single transmission"). There is no principled difference between Plaintiff's claim 1 and the claim this Court found invalid in *Dealertrack*.[9]

The "guidepost" cases from the Supreme Court also illustrate how Plaintiff's claims to organizing and forwarding information fail to satisfy § 101. For example, in *Flook* the Supreme Court found that a method for updating alarm limits during a catalytic conversion process in the oil-refining industry was invalid under § 101 because, *inter alia*, the post-solution step of adjusting the alarm limit could not save an otherwise unpatentable method claim. *Flook*, 437 U.S. at 590. Here, the '060 patent's concept of organizing and forwarding information about some unspecified "transaction" is even more abstract than was deemed unpatentable in *Flook*—as the '060 patent fails to mention any specific application or industry-specific process. Indeed, this Court should reject any argument that the use of a telephone or a channel saves an otherwise unpatentable abstract method claim.

Similarly, in *Prometheus*, the Supreme Court made it clear that its prior ruling in *Benson* stood for the proposition "that simply implementing a mathematical principle on a physical machine, namely a computer, was not a

---

[9] *See also Cybersource*, 654 F.3d at 1376 (finding invalid claims directed to "obtaining information about credit card transactions" over the Internet and then processing that information to verify "the validity of a credit card transaction").

patentable application of that principle." *Prometheus*, 132 S. Ct. at 1301. The Supreme Court further noted that in *Benson* "the mathematical formula" [for converting binary coded decimal numbers into pure binary numbers] had "no substantial practical application except in connection with a digital computer." *Id.* (citing *Benson*, 409 U.S. at 71). As a result, the *Prometheus* Court concluded that "the [*Benson*]claim (like the claims before [this Court in *Prometheus*] was overly broad; it did not differ significantly from a claim that just said 'apply the algorithm.'" *Id.* The same analysis applies equally here. Allowing Plaintiff to maintain this claim would enable Plaintiff to seek to preempt others from *all* "substantial practical applications" of the general concept of gathering, organizing, and forwarding data about *any* transaction. The claims simply do not "differ significantly from a claim that just said 'apply [that general concept].'" *Id.*

Bilski II also is applicable. In *Bilski II*, claims were directed to a series of transactions between buyers and sellers of commodities in the energy market, at different fixed rates, to protect or hedge against the risk of price changes. 130 S. Ct. at 3223-24. The Supreme Court reasoned that the claims merely explained the basic concept of hedging, which "is an unpatentable abstract idea, just like the algorithms at issue in *Benson* and *Flook*." *Id.* at 3231. "Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id.* at 3231.

36

Allowing Plaintiff to pursue claims based on the mere concept of gathering, organizing, and forwarding data about a transaction would allow Plaintiff to improperly preempt and monopolize use of the concept in any field. In fact, that is precisely how Plaintiff sought to apply its patent below, asserting its claims against a boundless universe of transactions and a staggering array of products and services, including those offered by airlines, sports leagues, social media companies, home security companies, television studios, cable service providers, online retailers, and cellular telephone service providers—essentially any field of business.

Plaintiff's remaining argument—that a claim is *only* abstract if it can be performed on paper or in the mind—misrepresents the law, and would not salvage Plaintiff's appeal even if it were supportable. Although it is true that mental processes are necessarily not patent-eligible under § 101, that does not make the converse true—*i.e.*, that any other process performed outside of a person's mind is patent-eligible under § 101. If it were, there would be no need for the machine-or-transformation test, or any other analysis. Indeed, in *Cybersource*, this Court invalidated patent claims even where the claimed method did require performance by a computer. *Cybersource*, 654 F.3d at 1376. Similarly, the mere references in claim 1 to a "telephone" as the source of data, and a "channel" over which data is sent, cannot save the claim. Plaintiff's "human only" test for abstractness is

37

directly contrary to a number of this Court's precedents finding claims involving general-purpose computer technology invalid.  *See*, *e.g.*, *Bancorp*, 687 F.3d at 1271-72 (finding invalid claims that required "digital storage," a "computer readable medium," and steps to be "performed by a computer"); *Dealertrack*, 674 F.3d at 1333 (finding invalid claims that required the method be "computer aided"); *Fort Props.*, 671 F.3d at 1323-24 (finding invalid claims that require "using a computer" to "generate a plurality of deedshares").

Finally, although not necessary to the Court's analysis, it bears noting that claim 1 in fact *can* be performed in a person's mind or by pencil and paper.  A person can (1) receive information in a single transmission from a telephone (*e.g.*, a grandmother receives a text message from her daughter and writes down a master list of birthday gifts to buy for her granddaughter's birthday), (2) divide the information into various subparts (*e.g.*, the grandmother reorganizes or separates the master list into sub-lists of different gifts to be ordered from different stores), and (3) send the information to different destinations over a channel (*e.g.*, the grandmother mails or emails the sub-lists to the different stores to order all the gifts).  Plaintiff's claim 1 *would* preempt others from practicing the abstract concept of gathering information about a transaction, organizing it into subparts, and forwarding the subparts to other destinations, regardless of (1) how those steps are performed, (2) what machines are used to perform the steps, and (3) what types

of transactions are at issue. The district court thus correctly concluded that claim 1 does not satisfy § 101 because the "abstract nature of this patented process [is] manifestly apparent." A000016.

## IV. This Court Should Affirm the District Court's Judgment Relating to Patent Claims Other Than Claim 1 Because Plaintiff Waived Its Arguments Relating to Those Claims.

### A. The District Court Properly Decided Defendants' Motion on the Basis of Claim 1.

Plaintiff's belated effort to salvage its lawsuits by claiming that the district court erred in considering only claim 1 is meritless. Plaintiff's own arguments and briefing in opposition to Defendants' summary judgment motion were limited to claim 1; Plaintiff consequently waived its right to make arguments concerning any other claims. As discussed above, Defendants moved for summary judgment that all of the claims of the '060 patent were invalid under § 101, and addressed all three independent claims(1, 13, and 18), as well as the dependent claims, in their opening brief. A000178-179, A000185-186. In response, Plaintiff described claim 1 of the '060 patent as "the exemplary claim in the complaints," A000238 at n.5, and restricted its arguments to that claim, App. Br. at 12 n.5 (admitting that "[i]n its answering brief, CyberFone only addressed claim 1 of the patent."). Even after Defendants highlighted that Plaintiff had implicitly conceded that if claim 1 were invalid, the remaining claims also were invalid, Plaintiff failed to rebut this or to discuss any other claims in its surreply. A000332-34. In short, Plaintiff had ample

opportunity to address other patent claims, and why other patent claims would be patent-eligible if claim 1 were not, but simply failed to do so.

Moreover, when Plaintiff tried, for the first time, to rely on claims 18 and 23 during oral argument, it did not provide the district court with any authority to support its contention that the court should consider its new arguments when it had failed to brief them. A000657 at 57 to A000658 at 58. Plaintiff still has not provided any reason why the Court should now consider any such arguments.[10]

In *Dealertrack* and *In Re Grams*, this Court decided the patent eligibility of multiple claims on the basis of one claim where the other claims were not separately argued. *Dealertrack*, 674 F.3d at 1332, *Grams*, 888 F.2d at 841. The district court here committed no error by doing the same—Plaintiff itself labeled claim 1 "exemplary," and failed to separately argue any other claim in its briefs.

The district court properly acted within its discretion by not considering arguments that Plaintiff did not make in its opposition brief,[11] for two additional reasons. *First*, by not considering Plaintiff's arguments relating to claims 18 and 23, the district court merely followed the well-settled rule, applied by both the Third Circuit and this Court, that arguments raised for the first time during oral

---

[10] Plaintiff affirmatively states that it is not addressing claim 13 on appeal. *See* App. Br. at 9 n.4.

[11] As the district court observed: "[i]n its brief, plaintiff focuses solely on how claim 1 is patent-eligible under § 101 …. No argument is made with respect to claims 13 or 18 despite defendants raising the ineligibility of those claims. Given plaintiff's focus the court deals only with claim 1." A000015 at n.6.

argument are deemed waived and need not be considered by the district court.  *See, e.g., In re Corio*, 371 Fed. Appx. 352, 355 (3rd Cir. 2010) (non-precedential, relying on *Pichler v. UNITE*, 542 F.3d 380, 396 n.19 (3rd Cir. 2008); *Kappes v. E.I. DuPont de Nemours & Co.*, Case No. 97-443-SLR, 1999 U.S. Dist. LEXIS 3580, at *38 (D. Del. Mar. 18, 1999) (argument not set forth in answering brief deemed waived); *Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 320 F.3d 1354, 1366-67 (Fed. Cir. 2003) (non-movant waived affirmative defenses by not raising them in opposition to summary judgment motion); *Respironics, Inc. v. RIC Investments, Inc.*, Case No. 04-0336, 2008 U.S. Dist. LEXIS 1174, at *10-11 (W.D. Pa. Jan. 8, 2008)(party waived argument and evidence by not presenting them in opposition to a summary judgment motion).

*Second*, the district court properly refused to consider Plaintiff's new arguments for the further reason that Plaintiff did not comply with District of Delaware Local Rule 7.1.3, which explicitly requires that all of the parties' arguments be timely set forth in their briefs:  Rule 7.1.3(c)(1) requires that both opening and answering briefs contain (D) a "summary of the argument, setting forth in separately numbered paragraphs the legal propositions upon which the party relies," and (E) "an argument, divided under appropriate headings distinctly setting forth separate points."  Rule 7.1.3(c)(2) specifically prohibits the party filing the opening brief from sandbagging its opponent by "reserving material for

the reply brief which should have been included in a full and fair opening brief." Rule 7.1.3 cannot be read to permit *any* party to raise new arguments at oral argument, particularly where, as here, the party had full opportunity to raise those arguments in its answering brief and surreply and admits that it made the intentional, strategic decision not to do so. *Kappes*, 1999 U.S. Dist. LEXIS at \*38. Because Plaintiff violated this Rule, Defendants had no notice or opportunity to address Plaintiff's arguments concerning claims 18 and 23 in their summary judgment reply brief.

Moreover, since Plaintiff waived any argument with respect to claim 18 before the district court, those contentions are waived for purposes of this appeal. It is well-settled that arguments not properly made below are waived on appeal. *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1281 (Fed. Cir. 2012) ("As a general rule, an appellate court does not consider an issue not passed upon below."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal, and we do so here."); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1371 (Fed. Cir. 2002) ("[W]e look to see whether the trial court and the party claiming waiver had fair notice and an opportunity to address the issue concerning the scope of a claim limitation."); *Interactive Gift Express*, 256 F.3d at

1346 (waiver doctrine precludes a party from adopting a new claim construction position on appeal); *Sage Prods, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) (refusing to consider infringement argument that was never presented to the district court).  Plaintiff has not identified in its opening brief any circumstances that excuse its failure to preserve its arguments relating to claim 18 for appeal.  *See HTC Corp.*, 667 F.3d at 1282; *Interactive Gift Express*, 256 F.3d at 1344-45.  Plaintiff cannot, and this Court should not, excuse the failure to address any other claims of the '060 patent, as it was admittedly intentional and deliberate.

Lastly, Plaintiff also has waived its challenge on appeal to the district court deciding the validity of the '060 patent on the basis of claim 1 alone for the further reason that it only made a cursory reference to the alleged error in a footnote of its appeal brief.  *See* App. Br. at 12 n.5; *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 20 nn. 4 and 5 (Fed. Cir. 2012) (district court error only alluded to in opening brief, not set forth in the statement of issues, and without legal support, and arguments raised only in footnotes, are waived); *Mirror Worlds, LLC. v. Apple Inc.*, 692 F.3d 1351, 1358 (Fed. Cir. 2012) (issues raised only in a footnote were waived); *Halliburton Energy Servs., Inc. v. M-I, LLC*, 514 F.3d 1244, 1250 n.2 (Fed. Cir. 2008) (argument made first at oral argument was waived when it was presented in only skeletal form in single sentence in opening brief); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (waiver

found when arguments were not developed and there was only perfunctory reference to the issue in footnotes).

### B.    In Any Event, Claim 18 Is Invalid Under § 101

Although the district court properly limited its analysis to claim 1, if this Court were to analyze claim 18, it would find that claim 18 is invalid under § 101 for the same reasons that claim 1 is invalid.  "System" claim 18 does not recite any specific machine, but rather redrafts claim 1's steps of gathering, organizing, and forwarding transaction data into operation "tiers."  Merely redrafting an abstract concept comprising steps into a system for performing those steps, without tying the system to a specific machine, does not make the concept patentable.  As the Supreme Court cautioned in *Prometheus*, "[t]he Court's precedents... warn us against interpreting statutes in ways that make patent eligibility depend simply on the draftsman's art without reference to the principles underlying the prohibition against patents for" abstract ideas.  *Prometheus*, 132 S. Ct. at 1294 (citation and internal quotations omitted).

This Court addressed this very issue in *Bancorp*, where some claims were directed to a method of managing a life insurance policy, some were to a computer readable medium for performing the method, and others were system claims that "track[ed] the content of the aforementioned method and medium claims." *Bancorp*, 687 F.3d at 1271.  This Court noted that although the method included

the step of "generating a life insurance policy," the system claim recited "a policy generator for generating a life insurance policy." *Id*. at 1277.  Similarly, although the method recited the step of "calculating fees," the system recited "a fee calculator for calculating fees." *Id*.  The Court held that "[t]he only difference between the claims is the form in which they were drafted" and that "[t]he district court correctly treated the system and method claims at issue… as equivalent for purposes of patent eligibility under § 101." *Id*.

Claims 1 and 18 of the '060 patent are analogous to those in *Bancorp*. Whereas claim 1 recites the step of "obtaining data transaction information," claim 18 reiterates this step as "a first transaction tier, operating to capture a data transaction from user…."  Similarly, the second and third steps in claim 1 are performed by other "tiers" in claim 18.  Because claim 18 merely recites "tiers" that perform the steps of gathering, organizing, and forwarding transaction data, the claim should be considered equivalent to claim 1 for purposes of § 101 analysis, and the same conclusion—that it is not patent-eligible—should be reached.

On appeal, Plaintiff re-writes claim 18 by importing many limitations from the specification into the claim term "tier."  *See*, *e.g.*, App. Br. at 11 ("The first tier 'comprises a transaction entry device which captures information from the user in response to any of a plurality of inputs from the user.'") (quoting '060 patent

specification, A000157 at col. 7, lines 25-30).  Whether the district court would

have construed claim 18 to read in these limitations from the specification is

irrelevant because Plaintiff failed to propose any construction of these "tiers" in its

opposition briefs (just as it failed to present any separate argument on claim 18 at

all).  For the same reasons discussed above, Plaintiff has waived any such

arguments for purposes of appeal.  Accordingly, this Court should affirm the

district court's judgment of invalidity of the '060 patent in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the judgment

of the district court be affirmed and the '060 patent be deemed invalid under § 101.

Dated March 6, 2013                              Respectfully submitted,

| | |
|---|---|
| */s/ Steven Lieberman* | */s/ J. Christopher Carraway* |
| Steven Lieberman | J. Christopher Carraway |
| Sharon Davis | Kristin L. Cleveland |
| Brian Rosenbloom | Robert T. Cruzen |
| R. Elizabeth Brenner-Leifer | KLARQUIST SPARKMAN, LLP |
| ROTHWELL, FIGG, ERNST & | 121 S.W. Salmon Street, Suite 1600 |
| MANBECK, PC | Portland, Oregon  97204 |
| 607 14th Street, NW, Suite 800 | Phone: 503-595-5300 |
| Washington, DC  20005 | |
| Phone: (202) 783-6040 | *Attorneys for Defendants-Appellees* |
| | *LinkedIn Corp., NBA Media Ventures,* |
| *Attorneys for Defendants-Appellees CBS* | *LLC, NBA Properties, Inc., Netflix, Inc.,* |
| *Interactive Inc., CNN Interactive Group,* | *NFL Enterprises, LLC, Skype, Inc.,* |
| *Inc., Dow Jones & Company, Inc., Dow* | *Twitter Inc., Yahoo! Inc., Yelp! Inc.* |
| *Jones Local Media Group, Inc.,* | |
| *Flixster, Inc., Fox Interactive Media,* | */s/ Jack B. Blumenfeld* |
| *Inc., Fox News Network, LLC, Fox* | Jack B. Blumenfeld |
| *Soccer Channel, LLC, Fox Sports* | Karen Jacobs Louden |

*Interactive Media, LLC, Home Box Office, Inc., Hulu, LLC, Twentieth Century Fox Film Corporation, Univision Interactive Media, Inc., Warner Bros. Entertainment, Inc.*

/s/ Susan M. Coletti

Susan M. Coletti
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Phone (302) 652-5070

*Attorney for Defendants-Appellees Avis Budget Group, Inc., Hertz Corporation, Orbitz Worldwide, LLC*

/s/ Stephen E. Baskin

Stephen E. Baskin
KILPATRICK TOWNSEND &
STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC  20005
Phone (202) 508-5899

*Attorney for Defendant-Appellee United Airlines, Inc.*

/s/ George L. Murphy, Jr.

George L. Murphy, Jr.
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4528
Phone: (404) 815-6500

*Attorney for Defendants-Appellees Intercontinental Hotels Corporation, Six Continents Hotels, Inc.*

MORRIS, NICHOLS, ARSHT &
TUNNEL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
Phone: (302) 658-9200

*Attorneys for Defendants-Appellees Hilton Garden Inns Management, LLC, Hilton Worldwide, Inc., f/k/a Hilton Hotels Corporation*

/s/ John L. Cuddihy

John Cuddihy
Brian M. Koide
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Phone: (202) 624-2500

*Attorneys for Defendant-Appellee Marriott International, Inc.*

/s/ Kirin K. Gill

Kirin K. Gill
James C. Yoon
Ryan R. Smith
WILSON SONSINI GOODRICH &
ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone: (650) 493-9300

*Attorneys for Defendant-Appellee Groupon Inc.*

/s/ Max Ciccarelli

Max Ciccarelli
J. Michael Heinlen

*/s/ Thomas L. Halkowski*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Phone: (302) 652-5070

*Attorney for Defendant-Appellee Pure Biz Solutions, LLC*

Justin S. Cohen
THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, TX 75201
Phone: (214) 969-1599

*Attorneys for Defendant-Appellee Southwest Airlines Co.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th of March, 2013, the foregoing **RESPONSIVE BRIEF OF DEFENDANTS-APPELLEES** was filed electronically with the U.S. Court of Appeal for the Federal Circuit by means of the Court's CM/ECF system. I further certify that the foregoing was served on the following counsel of record, by means of electronic mail as well as by the Court's CM/ECF system, which should have sent a Notice of Docket Activity:

Marc Aaron Fenster
Paul Anthony Kroeger
Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
mfenster@raklaw.com
pkroeger@raklaw.com
Phone: 503-595-5300
Attorney for Plaintiffs-Appellant
CYBERFONE SYSTEMS, LLC, FKA LVL Patent Group, LLC

Christopher Carraway
Kristin L. Cleveland
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Portland, OR 97204
chris.carraway@klarquist.com
kristin.cleveland@klarquist.com
Phone: 503-595-5300
Attorneys for Defendants-Appellee
NETFLIX, INC. Linkedin Corporation, NBA Media Ventures, LLC, NBA Properties, Inc.,
NFL Enterprises, LLC, Netflix, Inc., Skype, Inc., Twitter, Inc., Yahoo! Inc. and Yelp! Inc.

Kirin K. Gill
Wilson, Sonsini, Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, CA 94304
kgill@wsgr.com
Phone: 650.493.9300
Attorney for Defendants-Appellee
GROUPON, INC.

Audra A. Dial, Esq.
George L. Murphy, Jr.
Vaibhav P. Kadaba
Kilpatrick Townsend & Stockton LLP

1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Phone: 404-815-6500
adial@kilpatricktownsend.com
Gmurphy@kilpatricktownsend.com
Wkadaba@kilpatricktownsend.com
Attorneys for Defendant-Appellee
UNITED AIRLINES, INC., Intercontinental Hotels Corp. and Six Continents Hotels, Inc.

Massimo Ciccarelli
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
max@tklaw.com
Phone: 214-969-1700
Attorney for Defendant-Appellee
SOUTHWEST AIRLINES, CO.

William J. Marsden, Jr.
Thomas H. Reger, II
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
marsden@fr.com
reger@fr.com
Phone: 302-652-5070
Attorney for Defendant-Appellee
AVIS BUDGET GROUP, INC., HERTZ CORPORATION. ORBITZ WORLDWIDE, LLC
and PURE BIZ SOLUTIONS, LLC

John L. Cuddihy, Esq.,
Crowell & Moring, LLP
Firm: 202-624-2908
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
jcuddihy@crowell.com
Phone: 202-624-2500
Attorney for Defendant-Appellee
MARRIOTT INTERNATIONAL, INC.

Susan M. Coletti
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
coletti@fr.com
Phone: 302-652-5070

Attorney for Defendant-Appellee
Avis Budget Group, Inc. and Hertz Corporation

Jack B. Blumenfeld
Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Phone 302-658-9200
jblumenfeld@mnat.com
klouden@mnat.com

Attorney for Defendant-Appellee
Hilton Garden Inns Management, LLC and Hilton Worldwide, Inc.

/s/ Steven Lieberman
Steven Lieberman
Rothwell, Figg, Ernst & Manbeck P.C.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 11,307 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated:  March 6, 2013                    _/s/ Steven Lieberman_____
                                         Steven Lieberman